**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROSA R. MOORE | ) Civ. Action No. 07-1014 (PLF) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MIKE JOHANNS, SECRETARY, | ) |
| UNITED STATES DEPARTMENT OF | ) |
| AGRICULTURE | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

Plaintiff Rosa Moore states the following in opposition to Defendant's Motion for

Partial Dismissal:

**INTRODUCTION**

Ms. Moore filed a lawsuit against the Department of Agriculture claiming that

Defendant discriminated against her in violation of the Rehabilitation Act when it denied

her reasonable accommodations and constructively discharged her from its employment.

Defendant contends that Ms. Moore's constructive discharge claim should be dismissed

because she did not pursue a claim for constructive discharge at the administrative level.

The Court should deny Defendant's motion.  First, the agency had notice of Ms.

Moore's constructive discharge claim prior to the filing of Ms. Moore's lawsuit in federal

court.  Second, Defendant waived any objection it had to Ms. Moore's constructive

discharge claim when it consented to Ms. Moore's motion to add a specific claim for
constructive discharge to her complaint.

## FACTUAL BACKGROUND

Ms. Moore was formerly employed as an Audit Liaison & Management Control
Officer, GS-14/1801, Compliance Review Staff, Office of the Administrator, Foreign
Agriculture Service ("FAS"), U.S. Department of Agriculture ("USDA) (hereinafter "the
agency").    On or about April 26, 2005, Ms. Moore contacted EEO.  According to the
counseling report, Ms. Moore resigned from her position with the agency because the
process of obtaining a reasonable accommodation from the agency was "too
embarrassing and stressful" (Exhibit A).  On or about June 30, 2005,, Ms. Moore filed a
formal EEO complaint against the agency.   Paragraph 36 of the complaint alleged that
Ms. Moore was forced to leave FAS as a result of Defendant's discriminatory conduct
(Exhibit B).

The agency accepted the following claims for investigation:

Whether the agency subjected the complainant to discrimination based on
physical and mental disabilities and reprisal (prior EEO activity) when:

1.  on April 1, 2005, complainant was denied due process in her request
for reasonable accommodation;
2.  on April 22, 2005, complainant's sensitive medical records were
inappropriately released to her supervisor;
3.  on April 25, 2005, complainant was denied reasonable
accommodation, including temporary accommodation; and
4.  on April 29, 2005, complainant was issued an advisory notice of
concern regarding her conduct and performance.

See letter from Denise A. Banks, Chief, Employment Complaints Division to Paul
Thayer dated November 23, 2005 (Exhibit C).

On or about June 9, 2006, Plaintiff's prior attorneys moved to amend her EEO complaint to include a specific claim for constructive termination. The agency's attorney consented to the requested amendment (Exhibit D).

## ARGUMENT

The court should not dismiss Ms. Moore's constructive discharge claim. First, the agency had notice of Ms. Moore's constructive discharge claim prior to the filing of Ms. Moore's lawsuit in federal court. Second, the agency waived any objections it had to Ms. Moore's constructive discharge claim when it consented to the amendment of her formal EEO complaint to include a claim for constructive discharge.

**I.     The Agency had Notice of Plaintiff's Constructive Discharge Claim During the Administrative Processing of her complaint.**

In *AMTRAK v. Morgan*, 536 U.S. 101 (2002), the Supreme Court explained that the Title VII exhaustion requirement "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period" even when the acts "are related to acts alleged in timely filed charges." 536 U.S. at 105. In *Bowie v. Ashcraft*, 283 F. Supp. 2d 25 (D.D.C. 2003), the Court interpreted *Morgan* only to prohibit review of claims that plaintiff presents "for the first time in federal court." 283 F. Supp. 2d at 34. This approach gives the agency "notice of [the] claim and the opportunity to handle it internally." *Velikonja v. Mueller*, 315 F. Supp. 2d 66, 74 (*quoting Guerrero v. Univ. of Dist. Of Columbia*, 251 F. Supp. 2d 13, 21 (D.D.C. 2002)).

In the instant case, Ms. Moore advised the EEO counselor that she resigned from her position with the agency because the process of obtaining a reasonable accommodation from the agency was "too embarrassing and stressful." Significantly, her formal EEO complaint states that she was forced to leave the agency as a result of the

agency's discriminatory conduct.

The information Ms. Moore provided to the EEO counselor along with the statements made in her formal complaint put the agency on notice that she had a claim for constructive discharge.  As a result, Ms. Moore fulfilled the requirements of *Morgan*.  As the Court explained in *Velikonja v. Mueller,* "While the procedural requirements governing a plaintiff's right to bring a Title VII claim are not unimportant, the exhaustion doctrine was not intended to 'become a massive procedural roadblock to access to the courts.'"  315 F. Supp. 2d at 74 (*quoting Gustave –Schmidt v. Chao*, 226 F. Supp. 2d 191, 203 (D.D.C. 2002)).    Since the agency was aware of Ms. Moore's constructive discharge claim prior to the filing of her lawsuit in federal court, the Court should not dismiss her claim.

## II.    Defendant Waived its Objection to Plaintiff's Constructive Discharge Claim

It is well-settled that "the requirement of filing a timely administrative complaint is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Sanders v. Veneman*, 131 F. Supp. 2d 225, 230 (D.D.C. 2001) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982)).

In this case, Defendant waived its objection to Ms. Moore's constructive discharge claim when its attorney agreed to permit Ms. Moore to amend her formal complaint to include a claim for constructive discharge.  *See Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 58 (D.D.C. 2006) (Waiver is a sufficient reason for rejecting a claim of untimely exhaustion).    Because Defendant waived its objection to Ms. Moore's

constructive discharge claim during the administrative processing of her complaint, it is estopped from asserting untimeliness at this juncture.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Dismissal should be denied.

Respectfully submitted,


_____/s/_____
Alan Lescht, Bar No. 441691
Susan L. Kruger, Bar No. 414566
Alan Lescht & Associates, P.C.
1050 17th St., N.W. Suite 220
Washington, D.C. 20036
(202) 463-6036
(202) 463-6067
Counsel for Plaintiff

# EXHIBIT A

**EXHIBIT 3**

# EEO COUNSELOR REPORT
Agency Informal Complaint Number:
ECD Formal Complaint Number:

Please check one of the following:        Individual Complaint [ X ]        Class Complaint [ X ]

**COMPLAINANT INFORMATION:**                    **REPRESENTATIVE INFORMATION:**

Name: Moore, Rosa (Vicky)                        Name:  Thayer, Paul

Title/Series/Grade: Audit Liaison & Management        Title:  Attorney
                    Control Officer, GS-1801-14
Agency Address:  1400 Independence Avenue, NW        Address: 1919 Pennsylvania Ave., NW, Ste. 200
                 Washington, DC  20250                   Washington, DC, 20006
Work Telephone: N/A                              Telephone Number:

Home Telephone: (703) 426-5754                   Fax Number:

E-Mail Address:                                  E-Mail Address:

                                                 Attorney? Yes [ X ]    No [  ]

Anonymity Requested: Yes [  ]  No [ X ]

Choice between ADR and Counseling: (Check the appropriate box.)

ADR [  ]                Counseling [ X ]  If counseling, check the box below if counseling
                        was extended, in writing. [  ]

**CHRONOLOGY OF COUNSELING ACTIVITY:**

| | |
|---|---|
| Date of Initial Contact: | 5/2/05 |
| Date of Initial Interview: | 5/16/05 |
| Date of Most Recent Alleged Discriminating Event: | 4/29/05 |
| Date Complainant Became Aware of Most Recent Event: | 4/29/05 |
| 45th Day After Complainant Became Aware of Most Recent Event: | 6/13/05 |
| Explanation for Delay Beyond 45 Days (w/supporting documents): | N/A |
| Date of Final Interview: | 6/14/05 |
| Date Notice of Right to File (NRF) Issued: | 6/15/05 |
| Date Complainant Received NRF via Certified Mail: | 6/16/2005 |
| Certified Return Receipt Article Number: | 7005 0390 0003 0124 6026 |
| Date Complainant Signed Written Receipt for NRF (if hand-delivered): | |
| Date of Formal Complaint: | |

**INDIVIDUAL COMPLAINT INFORMATION:**

Issue: The following issues were raised by the Complainant in her individual complaint: (1) Failure to provide reasonable accommodation, (2) Denial of due process in the processing of her request for reasonable accommodation, (3) Inappropriate disclosure of medical information, and (4) Being issued an advisory notice of concerns regarding her conduct and performance, dated April 29, 2005.

Issue: The following issues were raised by the Complainant in her class complaint: (1) Denial of due process in the processing of disabled employees' requests for reasonable accommodation, (2) Failure by USDA and FSA to provide proper internal controls to ensure Disability Employment Program Effectiveness.

Basis: Disability (Physical) and Reprisal

Date of Issue:

1. Failure to provide reasonable accommodation

On April 25, 2005, Complainant received a decision on her request for reasonable accommodation, dated April 22, 2005.

Complainant alleged the following: Management issued this decision without any discussion or meetings described in the Departmental Directive. Also, she was not granted the accommodation requested or given an opportunity to clarify any issues or provide additional information. She requested to (1) work from home 2 days a week, (2) work from home on days of inclement weather (days in which the Office of Personnel Management announces a 2-hour delay or unscheduled leave or the weather forecast indicates a high probability of precipitation), (3) maxi-flex schedule with the option to work or not to work up to two credit hours from home or in the office, (4) start work before 6:30 a.m. The April 22 decision allowed her to work from home one day a week and allowed her to start work at 5:00 a.m. She was not granted the other accommodations requested or given an opportunity to clarify any issues or provide additional information needed.

She did not receive an AD 1164, Reasonable Accommodation Reporting Form or an AD 1165, Denial of Reasonable Accommodation Request, as required by the Departmental Directive. The decision memorandum misquotes her healthcare provider and limits her workweek to no more then 40 hours per week. She was unable to tell from the memorandum who the deciding official was, and there was no mention of her right to appeal the decision through the EEO process or MSPB. She e-mailed Ms. White to ask who the deciding official was and to request a copy of the AD 1164 and AD 1165, but did not receive a reply. Also, Ms. White expected her to submit an AD-1163, Confirmation of Request for Reasonable Accommodation, but no one gave her the form.

In early May 2005, she told Mr. Huttenlocker to forget about the reasonable accommodation request as the process was too embarrassing and stressful. She had decided to resign from her position

2. Denial of due process in the processing of your request for reasonable accommodation

On February 28, 2005, Complainant informed her supervisor of her intentions to request reasonable accommodation and the agency failed to provide her appropriate assistance in completing her request.

2

# EXHIBIT B

**EXHIBIT 1**

## CIVIL RIGHTS EMPLOYMENT COMPLAINTS AND ADJUDICATION DIVISION

|  |  |
|---|---|
| **ROSA R. MOORE**<br>3707 Ridgelea Drive<br>Fairfax, Virginia, 22031<br>(703)426-5754<br><br>      **Plaintiff,**<br><br>      **v.**<br><br>**UNITED STATES DEPARTMENT<br>OF AGRICULTURE / FOREIGN<br>AGRICULTURAL SERVICES/<br>FARM SERVICE AGENCY**<br><br>      **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)       **HEARING REQUESTED** |

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

### NATURE OF THE CASE

Plaintiff, Rosa R. Moore, by and through her attorneys, Paul S. Thaler, Kristin L. Acuff, and Thaler Liebeler, LLP, hereby brings this Complaint against Defendant, the United States Department of Agriculture / Foreign Agricultural Services / Farm Service Agency ("Defendant" or "USDA"), for violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* (Section 504). Plaintiff seeks monetary damages, including punitive damages, based on Defendant's discrimination and retaliation against her as a result of her disabilities, the inappropriate disclosure of her medical information, and Defendant's failure to meet requisite oversight and program requirements throughout the accommodation and complaint process pursuant to federal statutory and regulatory guidelines.

00001

## THE PARTIES

1.     Plaintiff Moore is a retired military officer who spent over twenty (20) years in the United States Navy.  Ms. Moore is currently a resident of 3707 Ridgelea Drive, Fairfax, Virginia, 22031.

2.     Ms. Moore has physical and mental impairments that often affect and limit major life activities as a result of such disabilities or because of side effects or complications that can result from controlling medications.  The major life actiivies affected include, but are not limited to, performing manual tasks, working, thinking, walking, hearing, seeing, caring for oneself, concentrating, sleeping, driving, and other physically taxing activities.  Accordingly, Ms. Moore is a qualified individual with an disability as those terms are defined in the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* and a qualified person with a handicap as those terms are used and defined in the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

3.     Defendant, the USDA, is a covered entity pursuant to the Rehabilitation Act and the ADA.

## FACTS

4.     A charge of employment discrimination and retaliation on the basis of Plaintiff's disability was filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the unlawful employment practices alleged herein.

5.     Prior to Ms. Moore's 2003 retirement from the United States Navy, the Department of Veteran Affairs ("VA") had given her a 90% rating of disability as a result of chronic problems, including depression.  However, upon information and belief, such problems did not impact her attendance or performance during her military career.

2

6.      Subsequent to the disability rating, in or about May 2003, Ms. Moore was diagnosed with a partial onset seizure disorder (epilepsy) and was prescribed medication to control her condition.  However, this was not without the onset of numerous adverse side-effects.

7.      In or about December 2003, Ms. Moore was hired as a full-time GS-14/1801 employee for the Foreign Agricultural Service ("FAS") of the USDA.  Ms. Moore was an FAS Audit Liaison and Management Control Officer, assigned to the Compliance Review Staff in the Office of the Administrator ("OA/CRS").  Ms. Moore is no longer an employee of the USDA.

8.      During her employment with the USDA, her direct supervisor was Robert J. Huttenlocker ("Huttenlocker"), Director of the Compliance Review Staff, who also conducted Ms. Moore's interviews before during the hiring process.

9.      As a USDA employee in the OA/CRS, Ms. Moore typically worked a "maxiflex schedule" which permits employees to arrive anytime between 7:00 a.m. and 9:00 a.m. with their workday ending eight and a half (8.5) hours later.  During her employment, Ms. Moore typically worked from 6:30 a.m. until somewhere between 3:30 p.m. and 5:00 p.m.  Workers on the maxiflex schedule are also allowed to work up to two (2) additional credit hours daily without advance approval between the hours of 6:30 a.m. and 7:00 a.m. or 3:30 p.m. and 7:30 p.m. These hours are managed very similarly to the way an employee's leave hours are calculated and accrued.

10.      Upon information and belief, during the hiring process or shortly thereafter, Defendant, specifically Huttenlocker, was aware of Ms. Moore's medical condition and/or knew that such disability prevented her from driving in hazardous conditions.  Furthermore, Defendant

3

was also aware that Ms. Moore's disability had led to the revocation of her driver's license in early 2003 and that she required medication to control her condition.

11.     In or about September 2004, Ms. Moore was absent from work for approximately 2-3 days for medical tests as a result of her disability. Around this time, Ms. Moore's medication was doubled and, out of concern that the medication might affect her work performance, she spoke with Huttenlocker about the possible side effects. Up until this point, very few of Ms. Moore's work absences were related to her medical conditions as she was, for the most part, able to successfully control any adverse side effects.

12.     Several months later, on or about February 28, 2005, the Office of Personnel Management (OPM) announced unscheduled leave due to heavy snow. Ms. Moore contacted Huttenlocker by phone and e-mail indicating that she would be working from home due to the snow. Upon information and belief, Huttenlocker was unhappy with her decision because of a meeting that was scheduled for that afternoon.

13.     Later that same day, during a phone conversation with Huttenlocker, Ms. Moore stated that she intended to request a "reasonable accommodation" based upon her disability and based upon the belief that such a formal request would also reduce any ill-will harbored by Huttenlocker related to her medical condition. Huttenlocker responded that he had never received any "proof" of her condition and proceeded to make reference to her security clearance and stated that Ms. Moore "couldn't have it both ways."

14.     Immediately thereafter, Ms. Moore informed her physician that further medical documentation would be needed to support her accommodation request.

00004

15.     On or about March 3, Ms. Moore contacted Huttenlocker and Nicole White ("White"), Mission Area Disability Employment Program Manager (DEPM), via electronic mail, and requested reasonable accommodations, including temporary accommodations, during the interim.  Ms. Moore informed White that she would be submitting all necessary medical documentation to **White only** since Ms. Moore was uncomfortable submitting medical records directly to Huttenlocker based on his past threatening and discriminatory behavior.  White responded almost immediately informing Ms. Moore that she [White] and Huttenlocker had already discussed her situation at some length.  Huttenlocker responded a few minutes later and offered to permit Ms. Moore to work from home one (1) day a week.  Ms. Moore accepted this offer as a temporary accommodation while informing both parties that she intended to proceed with her formal request.

16.     On or about March 29, Ms. Moore notified White that her healthcare provider was out of town, which would delay submission of more comprehensive medical documentation – although White had already obtained a copy of the letter that had previously been sent by her physician to Huttenlocker describing the side effects of Ms. Moore's medication

17.     That same day, Ms. Moore contacted Terry Thir from the Office of Civil Rights, seeking further guidance and assistance.  Ms. Thir referred Ms. Moore to Samantha Schmucker from the USDA's Human Resources Department.

18.     The following day, on or about March 30, Ms. Moore met with Ms. Schmucker and discussed her concerns regarding the processing of her accommodation requests, including but not limited to, White and Huttenlocker's failure to adhere to the USDA's policies in processing her accommodation requests and White's apparent bias during such process.  In

5

response, Ms. Schmucker stated that she had spoken to White the previous day and believed that

the process was proceeding satisfactorily.  Upon information and belief, Ms. Schmucker's

determination was based at least in part upon inaccurate information received from White about

her conduct during the accommodation process (ex. White, upon information and belief, had

failed to contact Ms. Moore, despite her representations to the contrary).  Tellingly, Ms. Moore

had received a voicemail message from White on March 29, immediately **after** White's

conversation with Ms. Schmucker.

      19.    On or about April 1, Ms. Moore submitted an AD 1163 formally requesting a

reasonable accommodation together with additional medical documentation requesting the

following: (1) to telework from home two days a week; (2) the ability to work from home on

days of inclement weather (regardless of whether she had teleworked from home that week);

(3) the option to work or not work up to two (2) credit hours from home pursuant to the

"maxiflex schedule"; and (4) a modification of her work start time (i.e. permission to start work

before 6:30 a.m).  Ms. Moore indicated that her request was based upon two (2) medical

conditions: partial onset seizure disorder (epilepsy) and major depression, including the side

effects that result from taking prescription medication to control such conditions.  Ms. Moore

explained in great detail the basis for such requests and also indicated that time was of the

essence.

      20.    On or about April 8, Ms. Moore received an e-mail from White stating that she

[White] would get back to Ms. Moore the following week and that she was "working with

Management to determine what accommodation options are available..."  Approximately ten (10)

days later, after White failed to respond, Ms. Moore e-mailed White requesting the status of her

00006

requests. White indicated that she was still working with "management." When Ms. Moore's asked who "management" referred to, White replied, "[w]hen I say 'your management' I am referring to your immediate supervisor and any other management officials that your supervisor would normally work w/prior to making any final decision that he may feel is necessary to be involved..."

21.    While Ms. Moore was awaiting a response from White, on or about April 17, she experienced a flare-up of a neuromuscular condition that had not exhibited any symptoms since 2002. Upon information and belief, this flare-up was stress-induced and resulted from Defendant's actions in response to her disabilities and accommodation requests.

22.    Despite this reoccurrence, Ms. Moore reported to work the following day, but left early for a doctor's appointment where she was prescribed pain medication which prevented Ms. Moore from driving. Ms. Moore was told by her physician that she had to take the medication consistently in order to achieve its full benefit.

23.    The next day, Ms. Moore reported to work, but again had to leave early in order to take the pain medication. Around mid-day on Thursday, April 21, as a result of Ms. Moore's neuromuscular condition, Ms. Moore's arm had swollen to twice its size, requiring that she leave the office in order to take her prescribed medication. Accordingly, Ms. Moore e-mailed her supervisor informing him, as a result of her medication condition, she needed to take a prescribed medication that impacted her ability to drive and her ability to maintain balance. Furthermore, she informed Huttenlocker that she had not taken the medication that morning and her symptoms had worsened. Ms. Moore requested to work from home for the remainder of the day and on the following day, Friday, April 22.

7

24.    In response, Huttenlocker replied by e-mail: "I need to get some guidance on this. **Not being privy to the medical specifics,** I am concerned that it might be best for you to be in a non-working capacity when on this medication.  I have a call in to Nicole, who knows more about your case.  You need to be essentially 100% when working from home, as you would to work in the office.  In the interest of your safety, I would ask that you proceed with going home now, and I will permit work at home today (at least until I receive any guidance to the contrary and advise you).  We will discuss tomorrow later today or in the morning.  This is a complicated situation, and I would appreciate your understanding as we resolve it in the short and long-term." (emphasis added).

25.    Despite Ms. Moore's attempts to make a doctor's appointment (in order to possibly change her medication), she was told that her physician was out of the office until Tuesday, April 26.  As a result, Ms. Moore sent **White** an e-mail request for accommodation asking to work from home through Tuesday, and further gave **White highly-sensitive, detailed information about her medical conditions, tentative diagnosis, medications and corresponding side effects.**

26.    Thereafter, White **copied Huttenlocker** to her e-mail reply, thereby disclosing Ms. Moore's sensitive medical information.  Upon information and belief, White knew, or at least should have known that Ms. Moore had no intention of sharing this information with Huttenlocker given his pattern of using this kind of information against her.  White's e-mail, in denying her request, stated, "[t]he Agency does not have any medical documentation to support your request to work from home permanently until you have been re-evaluated from your treating physician.  Your supervisor has stated that your current position is not considered

8

portable for more than one day a week. You may want to consider other leave options. Your supervisor has the authority to approve annual or sick leave, advanced sick leave, or LWOP…" When Ms. Moore told White that she was upset that her private medical information had been disclosed without her consent, White again copied Huttenlocker to her response, thereby further exacerbating an already tense and embarrassing situation.

27.    Later that same day, Huttenlocker sent Ms. Moore an e-mail that stated in part: "…I will not approve any additional requests for work at home under circumstances in which your medical fitness for duty is in question. As I indicated yesterday, I expect someone to be essentially 100% when working at home, just as if they were in the office…" As a result, Ms. Moore was forced to take unscheduled leave even though, upon information and belief, such a position is inconsistent with Huttenlocker's and FAS' usual handling of similar situations involving other personnel.

28.    Thereafter, on or about April 22, Ms. Moore contacted the Office of Civil Rights, Employment Complaints Division alleging discrimination in that the USDA (1) failed to accommodate her disability; (2) inappropriately disclosed her medical information; (3) denied her assistance with her accommodation request; (4) harassed and took retaliatory action against her; (5) failed to meet oversight and program requirements; and (6) that the internal controls for the USDA and FSA were non-existent or ineffective.

29.    Despite her well-documented disability, on or about April 25, Ms. Moore received a decision memorandum regarding her accommodation requests from White. In White's e-mail attaching the memorandum, White stated that the memorandum had been sent to Plaintiff via special courier on Friday, April 22 — the same day that Ms. Moore expressed her intention to

9

seek recourse for White's unauthorized disclosure of her medical information and retaliatory

behavior. Ms. Moore's accommodations were granted in part, and denied in larger part since

Ms. Moore's workweek was limited to forty (40) hours per week and her teleworking was

limited to one (1) day per week. Ms. Moore was also not permitted to work from home of days

of inclement weather. Furthermore, considerable discretion was given to Huttenlocker to

"approve or not approve" additional telework time despite Huttenlocker's record of threatening

conduct.

30.    Upon information and belief, the memorandum also contains numerous errors and

demonstrates White's inability to follow procedural guidelines - such examples include, but are

not limited to, misquoting Ms. Moore's healthcare provider, failing to specify who the deciding

official was, failing to consult with the USDA Medical Officer, and failure to inform Ms. Moore

of her right to file an EEO complaint or to seek relief from the Merit Systems Protection Board.

31.    Shortly thereafter, Ms. Moore informed Huttenlocker and White that she would

be filing an EEO Complaint.

32.    On or about April 26, Ms. Moore contacted the USDA's Office of Civil Rights

expressing her concern regarding Defendant's actions - particularly the actions of Huttenlocker

and White - throughout the entire accommodation and complaint process, which include but are

not limited to, the failure to adhere to numerous provisions of USDA directives and statutory and

regulatory guidelines governing the interactive process.

33.    Immediately thereafter, on or about April 29, Huttenlocker sent Ms. Moore a

memorandum entitled, "Advisory Notice of Concerns Regarding Your Conduct and

Performance," the first of its kind, notifying Ms. Moore of his "several concerns" regarding her

00010

"time and attendance practices, demonstration of performance while telecommuting, and use of official time for unofficial purposes." Furthermore, Huttenlocker stated that "appropriate disciplinary action can and will be taken" if Ms. Moore's behavior did not improve. Ms. Moore informed Huttenlocker that she felt his actions were retaliatory in nature and included FAS' Office of Civil Rights on this correspondence. Despite copying three (3) individuals on her reply, Ms. Moore received no response.

34.    Shortly thereafter, on or about May 3, in response to her supervisor's "Advisory Notice" and the aforementioned actions of Huttenlocker and White, Ms. Moore contacted FAS' Civil Right's Office informing them of said discriminatory and retaliatory action.

35.    On or about May 11, Ms. Delores H. Ruffin contacted Ms. Moore notifying her that she had been assigned as Ms. Moore's EEO Counselor.

36.    As a result of the above-mentioned events, Ms. Moore was forced to leave FAS – her last day with the agency was on May 20, 2005.

37.    On or about June 15, after the completion of the informal EEO complaint process, Ms. Moore received the "Notice of Right to File" the instant action. At present, Ms. Moore has not filed a grievance under a negotiated grievance procedures or an appeal to the Merit Systems Protection Board on the claims stated herein.

## COUNT I- DISCRIMINATION IN VIOLATION OF THE ADA AND THE REHABILITATION ACT

38.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

11

00011

39.    Ms. Moore was qualified to perform the essential functions of her job even without the requested accommodations.

40.    As stated herein, Ms. Moore's well-documented disabilities include a seizure disorder, depression, and a neuromuscular condition, all of which limit her ability to perform several major life activities. Ms. Moore has a record of such disabilities pursuant to 42 U.S.C. §12102(2) and/or is regarded by Defendant as having such disabilities.

41.    Defendant, a covered entity, discriminated against Ms. Moore by failing to provide reasonable accommodations for her known physical limitations, despite the fact that such accommodations would not impose an undue hardship on Defendant.

42.    Furthermore, Defendant failed to participate in the interactive process even though several USDA employees, including Huttenlocker and White, knew about Ms. Moore's disabilities and furthermore, failed to make a good faith effort to assist her in seeking accommodations. Absent this bad faith, Ms. Moore could have been reasonably accommodated.

43.    Defendant's discrimination was based upon Ms. Moore's disabilities and has caused, and will continue to cause, injury to Ms. Moore, including but not limited to, lost wages, benefits and employment opportunities, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

44.    In violating the ADA and the Rehabilitation Act, Defendant acted intentionally and with malice and/or reckless, callous and/or deliberate indifference to Ms. Moore's federally protected rights. Ms. Moore is therefore entitled to compensatory and punitive damages.

## COUNT II - RETALIATION / HARRASSMENT

45.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

46.    Defendant violated the ADA pursuant to 42 U.S.C. § 12203 when it retaliated against her while she was employed by Defendant as set forth above because she requested a reasonable accommodation, filed an EEO complaint, and raised internal grievances opposing Huttenlocker and White's discriminatory practices - all protected activities under the ADA.

47.    Defendant, through its employees, intimidated, threatened, and/or interfered in the exercise and/or enjoyment of, and/or on account of her having exercised or enjoyed, rights protected by the ADA, including but not limited to, the April 29 "Advisory Notice" sent by Huttenlocker which contained numerous factual inaccuracies and threatened disciplinary action as a direct result of the aforementioned protected activities.

48.    Defendant further retaliated against Ms. Moore by failing to properly respond to and/or accommodate certain requests, and thereafter, in failing and/or refusing to take appropriate action to remedy the effects of the retaliation suffered by Ms. Moore.

49.    Said retaliatory actions on behalf of Huttenlocker and White constitute adverse employment actions materially affecting her job title, duties, salary, benefits and/or work hours and were causally and inexorably linked to the aforementioned actions of Ms. Moore.  The close proximity in time between Plaintiff's seeking and filing an EEO claim and requesting reasonable accommodations, and the aforementioned unfavorable actions against Plaintiff offer further evidence that such actions were retaliatory in nature.

13

50.    Defendant's retaliation adversely affected the terms, conditions, and privileges of Ms. Moore's employment and has caused, and will continue to cause, injury to Ms. Moore, including but not limited to, lost wages, benefits and employment opportunities, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT III - DEFENDANT'S FAILURE TO MAINTAIN CONFIDENTIALITY OF MS. MOORE'S MEDICAL INFORMATION

51.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

52.    Pursuant to the ADA and the Rehabilitation Act, which implement the provisions of the Privacy Act, Defendant had a duty to maintain the confidentiality of Ms. Moore's medical information in connection with the reasonable accommodation process.

53.    White, as the Mission Area Disability Employment Program Manager (DEPM), and as explained in the preceding paragraphs, violated this duty by disclosing Ms. Moore's highly-sensitive medical information to Huttenlocker against her wishes and in violation of the ADA and the Rehabilitation Act.  Upon information and belief, said action was neither necessary nor excepted from the requirement of confidentiality.

54.    Said disclosure provoked even further discimination on the basis of Ms. Moore's disabilities and has caused, and will continue to cause, injury to Ms. Moore, including but not limited, to lost wages, benefits and employment opportunities, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

00014

## COUNT IV- DEFENDANT'S FAILURE TO PREVENT AND REMEDY DISCRIMINATION AGAINST MS. MOORE

55.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

56.    Upon information and belief, Defendant consistently failed to meet the oversight and program requirements, including but not limited to the requirements of 29 C.F.R. Part 1614, which allowed for further and continued discrimination against Ms. Moore on the basis of her disabilities.

57.    Upon further information and belief, Defendant's "Disability Employment Program" failed to place a premium on compliance with federal statutory and regulatory requirements, including USDA directives, by failing to take the appropriate steps to ensure the effective and consistent implementation of nondiscriminatory employment and human resources practices, particularly when an employee requests a reasonable accommodation.

58.    Such inaction has caused, and will continue to cause, injury to Ms. Moore, including but not limited to, lost wages, benefits and employment opportunities, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

(i)     that the Commission find in favor of Plaintiff on Counts I-IV;

(ii)    that Defendant provide sufficient remedial relief to make whole Ms. Moore for the loss she has suffered as a result of Defendant's actions against her as alleged

00015

in this Complaint, including all compensatory damages to Ms. Moore incurred as a result of the discrimination and retaliation against her, including an award of attorney's fees and punitive damages, pursuant to and within the statutory limitations of the ADA and the Rehabilitation Act; and

(iii)   that Plaintiff be granted such other and further relief as this Commission deems just and proper.

I HEREBY DECLARE under the penalties of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

6/30/05

Ms. Rosa R. Moore

**THALER LIEBELER, LLP**

Kristin L. Acuff
Paul S. Thaler
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C. 20006
(202) 466-4110
(202) 466-2693 (fax)
*Attorneys for Plaintiff, Rosa V. Moore*

00016

# EXHIBIT C



United States
Department of
Agriculture

Office of the
Assistant Secretary
for Civil Rights

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

NOV 2 3 2005

Mr. Paul Thayer
Attorney at Law
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006

Re: USDA Complaint No.: FAS-2005-00760
    Rosa Moore

Dear Mr. Thayer:

This letter acknowledges receipt of and accepts your client's Equal Employment Opportunity (EEO) complaint of discrimination against the Foreign Agricultural Service, dated June 30, 2005, and based on the postmark, is considered filed on the July 1, 2005. Please refer to this complaint number in any future communication on the subject EEO complaints.

We are accepting and referring for investigation the following claims:

Whether the agency subjected the complainant to discrimination based on physical and mental disabilities (seizure disorder and neuromuscular condition) and reprisal (prior EEO activity) when:

1. on April 1, 2005, complainant was denied due process in her request for reasonable accommodations?
2. on April 22, 2005, complainant's sensitive medical records were inappropriately released to her supervisor;
3. on April 25, 2005, complainant was denied reasonable accommodation, including temporary accommodation? and
4. on April 29, 2005, complainant was issued an advisory notice of concern regarding her conduct and performance?

The Department of Agriculture (Department) is required under 29 C.F.R. §1614.108 to complete an impartial, factual and appropriate investigation of the accepted claim within 180[1] days of the date the subject EEO complaint was filed. An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred. The complainant and the Department may voluntarily extend the 180-day time period not to exceed an additional 90 days. In addition, the Department may unilaterally extend the 180-day time period or any period of extension

---

[1] All references to days refer to calendar days unless specified otherwise.

AN EQUAL OPPORTUNITY EMPLOYER

for not more than 30 days where it must sanitize a complaint file that contains classified information.

When the investigation begins, an EEO Investigator will contact the complainant. The complainant is required to fully cooperate with the EEO Investigator. Failure to do so may result in dismissal of the EEO complaint. The complainant is required to present to the EEO Investigator all information she wishes considered relevant to the accepted claim. Also, the complainant is required to provide the EEO Investigator with the names of any witnesses she believes should be contacted. The complainant must keep the agency informed of their current address. If the Department is unable to locate the complainant, it may dismiss this EEO complaint under 29 C.F.R. 1614.107(a)(6).

When the complainant receives the EEO investigative report, she will be notified of her rights to elect either an agency decision based on the record or a hearing with a decision from an Equal Employment Opportunity Commission (EEOC) Administrative Judge (AJ). The notification will provide the complainant with specifics on how to exercise their election rights.

If you and your client have not received the EEO investigative report after 180 days from the filing of your client's EEO complaint, you have the right to request a hearing before an EEOC AJ. Should you request a hearing, enclosed is the identification of the EEOC District Office and address where the hearing request should be sent. Additionally, you must also certify to the EEOC that a copy of the hearing request was sent to the following address:

> United States Department of Agriculture
> Foreign Agricultural Service
> Civil Rights Director
> Mail Stop: 0509
> 1400 Independence Avenue, S.W.
> Washington, DC 20250

If you do not agree with the defined claim, you must provide us with sufficient reasons, in writing, within 7 calendar days from receipt of this letter, and it will be included in the complaint file. The statement should be sent to the following address:

> **United States Department of Agriculture**
> Office of Civil Rights
> Employment Complaints Division
> **Intake, Accept/Dismiss Branch**
> 1400 Independence Avenue, S.W.
> Stop Code 9440
> Washington, DC 20250-9440

17-(1)

Please also be advised that, consistent with EEOC Regulations and the Secretary of Agriculture's strong commitment to the early resolution of EEO complaints, parties are encouraged to seek resolution to complaints at any stage of the EEO complaint process. Settlement discussions may take place throughout the administrative complaint process. If a resolution is achieved, a copy of the settlement agreement must be provided to this office promptly to avoid unnecessary confusion and additional cost. Likewise, if at any stage of the EEO complaint process the complainant wishes to voluntarily withdraw her complaint, the complainant must promptly provide to this office, a written request to withdraw her EEO complaint. The withdrawal request must be signed, dated, and include the EEO complaint number. To ensure prompt receipt, please fax a copy of the voluntary settlement agreement or voluntary withdrawal directly to the **Complaints Adjudication Division, at Fax Number (202) 401-8035.**

If there are any questions or concerns regarding the status of this complaint, please contact the **CUSTOMER SERVICE UNIT** at 1-800-795-3272.

Sincerely,

Denise A. Banks
Chief
Employment Complaints Division

Enclosure

cc: Civil Rights Director, FAS
    ECD Liaison

    Ms. Rosa Moore
    8517 Pappas Way
    Annandale, Virginia 22003

17 (2)

# EXHIBIT D

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Washington Field Office - 570
1801 L Street, Suite 100
Washington, DC 20507

| | |
|---|---|
| **ROSA R. MOORE** ) | |
| ) | |
| **Complainant,** ) | **EEOC No. 570-2006-00059X** |
| ) | |
| **v.** ) | **Agency No. FAS 2-5-00760** |
| ) | |
| **MIKE JOHANNS,** ) | |
| **SECRETARY,** ) | |
| **U.S. DEPARTMENT OF AGRICULTURE,** ) | |
| ) | |
| **Agency.** ) | |

## CONSENT MOTION TO AMEND COMPLAINT

COMES NOW, Complainant, Rosa R. Moore ("Ms. Moore" or "Complainant"), by and through her counsel, Paul S. Thaler, Kristin L. Acuff and Thaler Liebeler, LLP, and hereby moves this Court, pursuant to 29 C.F.R. §1614.106(d), for permission to amend her Complaint to include a specific claim for constructive termination. Defendant has consented to the instant motion and the amendment requested herein. In support of her motion, Complainant shows the Court the following:

1.    29 C.F.R. §1614.106(d), which permits the amendment of Complaints, states as follows:

> A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint. After requesting a hearing, a complainant may file a motion with the administrative judge to amend a complaint to include issues or claims like or related to those raised in the complaint. 29 C.F.R. §1614.106(d)(2006).

2.    While Complainant contends that the Complaint already contains allegations

1

sufficient to create a claim for constructive termination,[1] out of an abundance of caution, Complainant is seeking the inclusion of the following amendment:

> Although Complainant was qualified and performed her job satisfactorily, Defendant's unreasonable and deliberate actions (or in some cases, Defendant's inaction) as described throughout the Complaint, and the intolerable working conditions that resulted, left Complainant with no other alternative but to resign her position with Defendant. Defendant's constructive discharge of Complainant on the basis of her disability, adversely affected the terms, conditions and privileges of her employment, and has caused, and will continue to cause, injury to Ms. Moore, in the form of lost wages, benefits and employment opportunities, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

3.      Complainant's request for amendment should be granted by this Court as her claim for constructive termination arises from the same facts, and is like the existing claims, contained in the initial Complaint. The amendment will require no additional proof beyond what has been conceded in the course of discovery, nor should it extend the trial of this action. Furthermore, the parties will also have ample opportunity to address any issues related to the claim, if any, during the parties' upcoming depositions and/or before the close of discovery on June 23, 2006.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Complainant Rosa R. Moore respectfully moves this Court for an Order permitting amendment of the Complaint to include a specific claim for constructive termination and such other relief as this Honorable Court deems just and proper.

Date:   June 9, 2006

Respectfully submitted,

**THALER LIEBELER, LLP**

_Kristin L. Acuff_

Kristin L. Acuff
Paul S. Thaler
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C.  20006
(202) 466-4110
(202) 466-2693 (fax)
*Attorneys for Complainant, Rosa R.. Moore*


_Ejike Obineche_ / by KLA w/ permiss

Ejike Obineche, Esq.
USDA/FSA/ELRB
1400 Independence Avenue, SW
Mail Stop 0591
Washington, DC 20250-0591
*Agency Representative*

---

[1] For instance, Paragraph 36 of the Complaint asserts that Ms. Moore was "forced to leave FAS" as a result of the Defendant's discriminatory conduct.

3

## CERTIFICATE OF SERVICE

I certify that on June 9, 2006, a true copy of the foregoing Consent Motion to Amend Complaint was delivered by first class mail, postage pre-paid and/or certified mail to the following:

The Honorable Abigail R. Coleman
Administrative Judge
US Equal Employment Opportunity Commission
Washington Field Office
1801 L Street, NW, Ste. 100
Washington, DC 20507
(202) 419-0739 (fax)
(by certified mail)

Kristin L. Acuff

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


| | |
|---|---|
| ROSA R. MOORE | ) Civ. Action No. 07-1014 (PLF) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MIKE JOHANNS, SECRETARY, | ) |
| UNITED STATES DEPARTMENT OF | ) |
| AGRICULTURE | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER**

Upon consideration of the Defendant's Motion for Partial Dismissal, Plaintiff's

Opposition and the entire record herein, it is this ____ day of _____, 2007, by

this Court,

ORDERED, that Defendant's Motion for Partial Dismissal is DENIED.


_____
United States District Judge